Good morning, Your Honor. May it please the Court, I'm Therese Cannata and I'm glad to be back, Your Honor, before Judge Walensky. Thank you. May it please the Court, I appear on behalf of the plaintiffs Irvine and Levita Leen. Your Honor, this case is about a class of one equal protection claim under the 14th Amendment in which the plaintiffs have pled specific facts that demonstrate a course in conduct of hostility. What is the date of priority on this adjudication? I'm sorry, Your Honor? What is the original priority date on the water right at issue? Oh, the, well the water Pardon me, I practice water law in Colorado and I recognize the procedures are a bit different in California, but I think you do have dates of appropriation, right? The date of your, what we call the decreed right? Yes, it was in 1967 the water license was issued. It is an irrigation ditch. It's not a natural 1967. Yes, and it is license number 7979. It existed starting in 1967. By the way, I asked the Court if you wish to review the history of this license. You may see it at the supplemental excerpts of record starting at 4 through, I believe, 23. It was issued in 1967. It remained and is, I assume, in place at this time. Continuously. It continues. Subject to the application for a change of point of diversion. Well, it never ceased to exist during that time. I didn't say it ceased to exist, but I mean there was a subsequent petition for change of point of diversion. Yes, indeed. Did that also include a petition for change of location of use? Yes, it did. It was a point of diversion and it was a point of use, meaning where you're allowed to take the water from and where you're allowed to use it, Your Honor, and thank you for pointing that out. As to the latter, the change of place of use. Yes. What was the requested change that was granted initially on that point? I don't, I would have to have a map to describe it accurately to Your Honor. Well, just paint me a visual map. Well, a visual map is if you have the property running, there's an irrigation stream going across the top of the property and on one side is the lien's home. The stream goes through. The point of diversion was on the map located, I believe, and I hope I have this right. I asked you about the change of the place of use. The place of use, yes. What request was made in that regard that was granted? You know, Your Honor, I wish I could give you a better description of that, but I believe it. It's not an issue here, but it seems to me relevant. Oh. Well, I believe that the place of use was not significantly different. It was going to be on the property above the stream. The point of diversion, I think, was really the thing that got this started because the map located it in a different, the original license located it in a different place. When the Water Board came out, and I believe they first came out in around 2000, between 2006 and 2007, they came out to the property. They looked at it. Mr. Lien had requested a simple correction. Water Board said fine, no problem. And is the, this is a return flow adjudication, correct? It is not a direct diversion from the stream, but is a diversion, is the use of water from return flows from an upstream user? Yes. It's here, it's farm water. And does that water on the return flow form a natural channel or some physical? Yes, it does. There's a retaining basin sort of at the top of it. Again, we've had that going above the property. You have the stream going in the house below. There's a retention area up that brings it through, but it's connecting. There's upstream properties and there's downstream. And if that flow were to be left uninterrupted with no further diversions, the natural flow would take it back to the stream? It would return to the stream? No, it would go downstream. It goes downstream. It doesn't go back up. It doesn't go around. Well, I mean, by the stream, I mean the original point of, the point of diversion from the stream by the upstream neighbor is off of the stream. We'll call that stream A, since I don't know the name of the stream. Now, there are return flows. I'm asking you, if those return flows were left uninterrupted, would they return to stream A or where would they end up? Would they just percolate into the earth and go into whatever aquifer is there right now? I think that's true. May or may not be tributary to the stream? I think that's true. I think that it would, if you stopped the flow, I think you're asking if you stopped the flow to the lean property, what would happen to that water? Is that the court's question? I think if you stopped it, it would just disperse. It would disperse from that point on into the aquifers. Thank you. All right. Shall I continue? Please. I also wanted to advise, but I wanted to leave about four minutes. All right. So this is a, in this case, and I had the privilege. Well, it seems like I've got all the questions this morning. What were the facts that led? It seemed a bit bizarre. Apparently there was some criminal proceedings because the gentleman was cleaning the ditch. Yes, Your Honor. And when you say the ditch, is this the ditch below the point of diversion or above the point of diversion?  Your Honor. So it was his ditch. It's his ditch. So, Your Honor, this is a, I actually had the privilege of trying the case below. How do you get charged criminally for cleaning your own ditch? I don't understand. Yes, Your Honor. It was a, Mr. Lean and a, and a tenant on his property were cleaning the ditch during the summer. During the summer, because of the rainy seasons in California, this ditch was essentially almost dry. It had no connectivity below, and it had very little water in the ditch, and there certainly were no, was no biological life. At the time, and this is in 2002, August of 2002, when they are cleaning the ditch, a fishing game warden spots them and says, you are altering a streambed without a permit. And a streambed under Cal, and what was ended up, well, fast forward, when we tried this case in 2011. This is not stream A. This is the ditch that you say may or may not return to stream A. Right, right. So they eventually, by 2003, the local, and this would be the district attorney defendant, Hal Thomas, had charged Mr. Lean with a misdemeanor of alteration of a streambed. The case then went off into diversion because Mr. Lean didn't even know at the time that he had a license, a water license. But in 2006, the water board said, Mr. Lean, you have a water license. I guess they had made some inquiry about this as they were investigating this criminal case. And this water license runs with the land, water license 7979. But then it was discovered that there was this need for a correction to the point of diversion and point of use. Now, the district attorney in the meantime had convinced Mr. Lean to go in what's called pretrial diversion of a form of it in Butte County. It's not exactly the same as it would be in the Bay Area. But the gist of it was, go off and we're going to go onto your land and we're going to look at your land and decide what you're going to be allowed to do with this stream. But in the middle of that, of course, he finds out he has a water license. The district attorney and district attorney defendants develop what's called a restoration plan. And this plan is going to supposedly take the stream and it's supposedly going to restore the land to its natural water braids and natural flow. Now, the problem with that theory is that it's apocryphal, to be simple. There weren't any. And this jury trial actually involved that case being presented. Seventy court appearances later, he won his right back to a jury trial to get out of this idea. Now, the reason Mr. Lean did not want to do this restoration plan is because it would require taking this irrigation ditch that had been running through this property for many years and moving it into an area on his property that would actually, during the winter months, flood his property and his neighbor's property. So he, on his own advisors, were telling him, don't do that, don't agree to that, not to mention the cost and the expense, and if it worked. The case goes to trial. An expert called by Mr. Lean testifies that this irrigation ditch, according to maps that had been admitted into evidence and discussed, had been around at least since 1945. It had always been there. So contrary to what the district attorney was saying, no, this thing had always been there and it shouldn't be moved. And the jury decided, and also there was evidence by a biologist and by a geomorphologist, and we had all the experts lined up, and the jury rightly determined an acquittal and said that there was no, it wasn't a stream under California law and this restoration plan was bluntly a nonsense. This is March of 2011. Now, during that time, prior to March of 2011, between 2006, around 2007, the district attorney went back to the water board and said, no, no, no, you can't correct this. Okay, let me ask you about that. Do you contend that to be an ex parte communication? No, I consider it to be a back channel and unnecessary and irrational communication. Well, it just seemed to me that back channel and ex parte are about the same thing. In a sense. If proceedings are pending. Yes. And I checked your California water board and ex parte communication law generally, and I had a question when I finished that research about whether the case was pending for purposes for application of ex parte communication, which would, of course, be prohibited. In Colorado, to actually use the criminal processes to affect a civil result is actually unethical and is subject to sanction. And it seems to me that you're describing communications to an administrative, essentially an administrative agency under California law that are prohibited. But I couldn't tell if they were subject communications regarding a pending case. What's your view of that so that I can understand your position? And I misunderstood the Court's reference to ex parte, but they certainly were communications that Mr. Lean and his lawyers were not privy to. I was counsel. They're off the record and not, and without notice. Right. Off the record, without notice. These communications, these back channel communications that I've described, were discovered later through public records act requests and also productions after this lawsuit was filed. And are those in the record? They are pled in the complaint because this goes by complaint. We don't really have an evidentiary record. Yes, those communications are pled in the complaint. All right. He communicates with the Water Board in 2007 and says, no, you can't do this correction, rescind it. Water Board says, look, we don't want to get in between you and the Leans regarding this. We'll rescind it. Mr. Lean, you make an application for an amendment to your license. Mr. Lean, because this thing with the district attorney is going on, everybody agrees it's going to go on hold until after the criminal case is over. The criminal case concludes with an acquittal in March of 2011. In April of 2011, Mr. Lean and his counsel, including me, he had a water rights counsel too, went to the Water Board and said, we're ready. We'd like to get our amendment completed. This is a routine matter. We've already been out once. If you need to see it again, let us know. District attorney gets wind of it again and starts opposing it after the acquittal. Wasn't he entitled to oppose it, though? He was entitled by statute. Notice was to the district attorney and by statute. But the question would be, why was he doing this for a rational purpose, meaning was it, did he have a, or was he doing it for vindictive reasons? And I submit, Your Honor, that he was doing it for vindictive and irrational reasons, because what he was. Well, what is the basis of his stand, of the district attorney's standing? Is there some peculiarity in California law that gives a district attorney standing in change-appointed diversion cases? There is a statute that says that if there is going to be a change or an amendment, that notice can go to the district attorney's office. And so he would have a right to that notice. And that's what invokes the State action. That's why it wasn't just a private citizen. It wasn't like John Smith, the neighbor, calling the Water Board. This was a district attorney and his agents, Mr. Lane and others, calling the Water Board and saying, no, you can't do that. And he raised, again, the same restoration plan. What's remarkable about this is that during the trial, the district attorney presented no expert testimony on the restoration plan. When the maps went up on the screen and showed that the stream had been there since 1945, he had no response to that. But yet he still went back to the Water Board in April and said this restoration plan has to happen. And he told counsel, and this is alleged in the complaint, that if you don't adopt the restoration plan, I will continue unrelentingly to oppose your water license amendment. Counsel, you're down to two minutes. Thank you. I'll wrap up and say that after that, helicopters were flown on the land. And a year goes by. And in 2012, Your Honor, we filed this lawsuit. And eventually, the Water Board quickly, really, approves it quite easily. Your Honor, I did not get to the legal points. But I will try to address those in rebuttal. All right. Thank you, counsel. Good morning. Please support Stephen Horan for appellees. The history, as some of the Court's questions touched on, is quite extensive in this case. There was initially observations of significant tractor work in an unnamed stream. I would strongly disagree with the characterization of an irrigation ditch. The water rights permit relates to a un – it's called an unnamed stream . So what we're talking about here is a true, you know, water channel, a natural creek. But the source of the water is our return flows from a previous legal diversion from the stream, correct? The – if I understand Your Honor's question, the preexisting water right was allowing a diversion and use of water from that unnamed channel. But I think very significantly, and it's said in the – Yes, but I'd like to have an answer to my question. There is an original diversion from – what is the name of the stream? Well, that's – the difficulty is it's labeled under the water permit as the unnamed stream tributary. Oh, I understand. But there must be water flowing down some stream from a mountain in order for it to be diverted by someone. And what is the name of that stream? Dry – I think that would be tributary to Dry Creek would be the – Dry Creek? Dry Creek, yes. All right, thank you. Yes. So there was an original diversion of water from Dry Creek by an upstream neighbor, is that correct? No, I don't think that is correct. I think there was a water permit for this landowner to divert and water and use – From Dry Creek? From this channel to – tributary to Dry Creek. Well, it isn't Dry Creek. No, but it is the subject of the original 1960s water permit. But I think very significantly, Your Honor, is that the Water Board decision, which is in evidence before the Court, very clearly says that there was no existing – there was no existing reservoir on this land nor subject of the water permit that dates back to the 60s. In other words, there's a water channel you can divert and use, but the mislabeling of this as just an irrigation ditch, I think, is misplaced. There's a water channel from which there was a permit to use. It was observed in 2002 that there was significant tractor work being done. The environmental DA for the county cited both the contractor and the owner. The contractor pled guilty. The owner pled no contest and wanted to enter a diversion program, which required working out an agreement for restoration. The two parties never reached an agreement on restoration. The owner, Mr. Lean, in the midst of this, discovered that, yes, there was an old water permit for this property. He went down to the Board and sought a ministerial correction of the water permit that, in fact, involved a change of point of diversion and use. Well, what difference does that make? That is within the jurisdiction of the Water Board. It is your own. That's not within the jurisdiction of the district attorney. Well, I'll make two points. First of all, it was put at issue by Mr. Lean at sensing hearings in the community. Yes. At the time that an application was made for a change of point of diversion. Did you – did the district attorney enter his or her appearance? The district attorney was not notified of the request for a ministerial correction when the district attorney learned about it in the context of the criminal case because it was being proffered by Mr. Lean as a way to modify sentencing. At that point, did you – at that point, did the district attorney move to intervene in the diversion proceedings, change of point of diversion proceedings? I don't think there was any formal action called a, you know, motion for intervention, but the district attorney evaluated this ministerial amendment, contacted the Water Board, and said this is the case. Directly without giving notice to the other side or giving them an opportunity to be heard or to be present during any such presentation? Well, there were many opportunities to be heard and present evidence once the Water Board contacted Lean and said it. Why isn't that an ex parte communication? If there is a civil court proceeding and any one of the three of us want to intervene or to be heard in those proceedings, there are proper procedures for being heard at those proceedings, correct? And it's called either a motion to intervene or a motion to join or some legal proceeding that gives the district attorney standing to be heard. Now, the allegations here, as I understand it, is that the district attorney, in vigorously pursuing criminal, a criminal case, is proceeding to inject himself or herself into the civil proceedings. It just strikes me as facially that's denial of due process. I don't understand. That's an opportunity for you to explain to me why that isn't so. I appreciate those comments, Your Honor. The subject of the ministerial amendment was put at issue and proffered by Mr. Lean in the criminal case to impact sentencing. And when the DA learned of this, he looked into it. He investigated it. He also has a separate employment role with the California Department of Fish and Game. He looked into it. He told the board, I don't think this was a correct ministerial amendment. And then the board revisited it and said, I think that that may be. All of this unbeknownst to the applicant, correct? These initial communications, I think that is true, but then the board. The answer to my question is yes. I think those first two contacts after the DA was made aware of this new ministerial amendment, the initial contact with the board was by the DA without Lean's involvement. And I ask you, why isn't that a clear violation of due process? If I bring a case or any of the three of us bring a case in court, we have the right to a fair hearing and to a determination of our dispute on the record. And if some other party, withstanding or not, proceeds to intervene in our dispute and backchannel the court, that's why isn't that a deprivation of due process? Now, I'm not saying that we should recognize it, that we should give it merit, that you lose the case or anything like that. I just want to know your view of why that is not a violation of due process. I guess I would observe that the Water Code in this case, California Water Code, expressed that there's a statute directly on point that says that when somebody seeks a change petition or water permit, the DA is to be given notice. The DA was never given notice of this ministerial amendment, such that the first time the DA learned of it was in the context of the criminal case. And the statute does authorize the DA to protest. Did you take any steps on the record to protest? Did you take any steps that normally would be pursued in terms of an intervention of that type to give notice to the other side that you are going to seek to be heard and have an opportunity to have counsel present while you do so? I don't believe there was such notice in advance of the first contact. I believe the matter was subsequently shared with the criminal court judge. There was, in fact, a motion to dismiss the criminal case because Mr. Lean objected to the very contact Your Honor is pointing out. There was a full-blown hearing of that issue and a lengthy transcript. The Court did not grant the motion to dismiss, but the Court in the full context said, look, if Mr. Lean didn't know he had a water right, whether it impacts or not on the criminal charge of screen bed alteration, I'm going to let him withdraw the no contest plea. You guys haven't worked out a restoration agreement anyway, so we're going back to a pending criminal case. You can plead not guilty. That's when Ms. Cannata stepped in to defend the criminal case. Counsel, if I could turn to the legal doctrine in this case for equal protection and due process clause. As to the due process clause argument, I understand one of your arguments you make towards the end of your brief is this is covered by qualified immunity. Yes. Is that correct? Okay. And I think you say in your brief that that was raised to the district court initially, correct? It was. Okay. So I understand your argument there. On the equal protection clause argument, I was having trouble understanding what the district court did with that argument. Can you show me where in the district court's order it actually discussed the equal protection clause and why it was dismissing it? I can't, Your Honor. I guess I can only say that there are three orders granting motions to dismiss that precede us today, the first by Judge Carlton and two by Judge Nunley. Equal protection defenses were briefed in all of them. I think that ultimately the implicit finding by Judge Nunley is after the order granting the motion to dismiss the Third Amendment complaint where he says, look, anything before May of 16 is time barred. And that's, you know, you lost your ministerial amendment back in 08. You knew it. You briefed the criminal court saying that the defendants had violated your constitutional rights, so you were unnoticed. It was a discreet act. You didn't file suit. That's time barred. So Judge Nunley said, tell me anything you got from May 17, 2010, forward until May of 2012 when you filed suit. That's what we got in the Fourth Amendment complaint. It consists of nothing more than about four or five miscellaneous allegations of communications by the district attorney and the environmental consultant Lane to the Water Board about their protest to the petition. We went through those very specifically in the brief on the motion to dismiss, and I could cite the court to the record if it needs that. But it's two or three pages of the motion to dismiss. I would point out, and we say this in the brief, that each and every post-May 2010 statement or opinion expressed by either my clients Lane or Thomas, each of those is covered by the State Water Board decision, and in virtually every instance they actually affirm the assertions or concerns raised in those protests. And I appreciate that's your argument on the merits as to why you should prevail. I guess my concern is that as I read the district court's last order, I'll say the Judge Nunley final order, I just didn't see anything saying you're right or you're wrong. I just didn't see anything. And normally we review judgments and not arguments, and so I'm just not sure what judgment we're reviewing as to the Equal Protection Clause argument. So if there's a piece – if there's a – I just want to confirm it. Look, you didn't write the order, and I understand, but if there's a certain page in the excerpt of the record that says, no, no, here's where Judge Nunley said squarely this is why you lose the Equal Protection Clause argument, point me to it. If not – There is not in the order, and I guess I could only offer on that is that our position is that under the plausibility standard, the facts added in the Fourth Amendment complaint simply would fail to state as a matter of law an equal protection. It requires some facts pled to establish that a clear standard existed against which the departure, even for a single plaintiff, could be readily assessed. And I would submit here in this context that there is no – when we have a water code that permits the DA's protest and the factual history going back to 2002 with this case, the board saying there was an incorrect ministerial amendment, all of these various factors that I would submit there is utterly no clear standard against which a departure could be assessed on the facts of the case. Counsel, along that same line, did the district court address the qualified immunity issue? The district court did not. And how about the issue of whether or not Mr. Ramsey could be held individually liable? Was that issue addressed by the district court? Not in the final order. My memory serves, I believe it was in a prior order. Well, but the final order did not. It did not. So would it be prudent for us to remand this case for the district court to actually rule on all those issues? I would submit, Your Honor, that that is one option, but I feel as though the record and the thoroughness with which Judge Carlton and Judge Nunley twice have examined the legal issues here and the defenses, including statute of limitations, there's malicious prosecution, or I'm sorry, prosecutorial immunity that would exist at least during the pendency of the criminal case. And then when we look at the paucity of facts left over after May of 2010, that I think the record, from the record, it's appropriate for this Court to affirm as a matter of law and favor. You would agree. Well, maybe you wouldn't agree. Is it fair to say that the record in this case showed a level of involvement by the district attorney that was different or that could call into question his bias? I think it was a very zealous prosecution. I don't think there's any question about that. For a relatively minor offense. I would submit that the environmental DA takes very seriously all perceived violations of environmental law and prosecutes them very vigorously. I think that the backdrop to this case with the contractor pleading guilty, the no contest plea, the restoration effort, and then all of that coming on the blue. Well, but once that was resolved, once there was an acquittal, the DA still continued to challenge vigorously the application. What do you attribute that to? Because it had sort of been misrepresented, misrepresented by the applicant seeking a ministerial change, suggesting all these works existed forever, when, in fact, no, there was never a dam or impoundment before. That was never part of a permit. The point of diversion and the place of use were, in fact, different. And the State Board dug through all of it, went independently to Caltrans and said, you know, Mr. Thomas, you're right. But ultimately granted the application, right? With several conditions. All of the conditions that are imposed in the State Water Board order require Mr. Lien in the future to obtain all necessary stream bed alteration permits, CEQA, and other, you know, control agency permits for any further action on it. All right. You've exceeded your time unless there are other questions. Thank you. We'll go to rebuttal. Thank you. Your Honor, with respect to the Water Board, the Water Board said the irrigation ditch will stay exactly where it is. There was no change in that. The Water Board also importantly said that the district attorney's contention that the license was revoked as a matter of law was rejected by the Water Board. It always remained in place, and the water and the license was approved. The inspection was really a replication of what happened in 2007 and the issue. It was CEQA-exempt, by the way, and the matter proceeded. To answer Your Honor's question about the equal protection, it is true. The district court did not address equal protection. And the district court seemed to have perhaps assumed that if a finding of no protected property right, which I think there was a protected property right, but a finding of that somehow obviated the need to go to the equal protection question, and it does not. It is, to review that very quickly, the district court, the class of one does not require a finding of a protected property right, although there is one. Also, if the Court were to send this back, I would also add that on the issue of comparator, which was breached by counsel, neither the Ninth Circuit nor the Supreme Court of the United States has held that you have to have a comparator. And, in fact, if you look at the Seventh Circuit, which really is the progeny of the comparator rule, the Seventh Circuit said that the — let me get my notes here, sorry, there is a slight middle there. The Seventh Circuit said that the — that if there is a presence of animus — well, first of all, it said three things. It said, number one — sorry, Your Honor. How do we determine if there is no comparator? How do we determine whether or not the individual has been treated differently? Agreed, Your Honor. And I think that's the critical question. That's where we start with Olek and I think in this Court in Gerhardt in the Ninth Circuit. I think the first thing is you don't have to deal with that issue. You have to plead something plausible. And in this instance, if you plead animus or hostility, as we have pled in detail — and I can go through those with the Court, but in limited time — that at the pleading stage, and again, the comparator really doesn't have to be there in the pleading stage, and the Seventh Circuit has said that. Also, and — But the Ninth Circuit hasn't said that, right? The Ninth Circuit hasn't commented on it. That is true. So you're saying for a class of one equal protection claim, no comparator is required if you plead animus? Because it satisfies the other prong that Your Honor brings up. It can't just be a conclusive reference to animus. I think you have to have specific fact allegations to say these are the reasons why there was animus. And I think we've more than pled that in this case. Do you think it would be prudent for us to remand to the district court? Your Honor, yes. It needs to be remanded to the district court. I think the question is when you remand us, is there anything else you want to tell the district court on the way down? And I have to leave that to Your Honors. But I think that if the Court were to take up the issue of the comparator, I would ask the Court to follow essentially the rule adopted in Swanson and Ganowski that we cited in our briefing to the Court. And where the instance in Swanson, for example, where a mayor had severely abused powers in order to achieve a vendetta was not necessary. At that point, a comparator, he didn't have to go out and find a bunch of people who had been treated the same way because you're not going to. Similarly in Ganowski, where there's something like 24 citations by the same sheriff or local law enforcement, he didn't have to go back. And I think I'm going to close. You're over time, so if you could just summarize. Are you done? I guess I think I've covered all the issues. All right. Thank you. Thank you, counsel. Thank you to both counsel for your arguments in this helpful case, in this case. The case as argued is submitted for decision by the Court. The final case on calendar, Wachanski v. Zawin, has been taken off calendar, pending settlement. That completes our calendar for today. And we are on recess until 9 a.m. tomorrow morning.
judges: Lucero, Rawlinson, Owens